[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11876
Non-Argument Calendar
_____

Agency No. A087-497-651

PIETER JAN MARTHINUS SWART,
LARIZE NADIA SWART,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 15, 2014)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Pieter Jan Marthinus Swart and Larize Nadia Swart (the Swarts) seek review of two final orders of the Board of Immigration Appeals (BIA), one reversing the Immigration Judge's (IJ) grant of asylum and withholding of removal, and the other affirming the IJ's denial of relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).  On appeal, the Swarts raise two issues.  First, they argue that the BIA erred by finding that their proposed social group—crime witnesses—lacked the social visibility that is required for asylum and withholding of removal under the Immigration and Nationality Act (INA).  Second, the Swarts argue that substantial evidence did not support the BIA's denial of their request for CAT relief.  After careful review, we deny the petition.

I.

When reviewing the final order of the BIA, we review questions of law <u>de novo</u>, with appropriate deference to the BIA's reasonable interpretation of the INA. <u>Assa'ad v. U.S. Att'y Gen.</u>, 332 F.3d 1321, 1326 (11th Cir. 2003).  We follow the BIA's statutory interpretation of the INA unless the interpretation is unreasonable, arbitrary, capricious, or clearly contrary to law.  <u>See</u> <u>Castillo-Arias v. U.S. Att'y Gen.</u>, 446 F.3d 1190, 1196 (11th Cir. 2006).

We review the BIA's factual determinations under the substantial evidence test.  <u>Kazemzadeh v. U.S. Att'y Gen.</u>, 577 F.3d 1341, 1350 (11th Cir. 2009).

Under this highly deferential test, we affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1351 (quotation marks omitted). We may only reverse the BIA if the record not only supports reversal, but compels it. Id. The fact that the record may support a contrary conclusion is insufficient to reverse. Id.

## II.

The Swarts first argue that the BIA erred in reversing the IJ's decision to grant the Swarts asylum and withholding of removal. To qualify for asylum or withholding of removal, applicants must establish that they are unable or unwilling to return to their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The Swarts claimed membership in a "particular social group" consisting of "crime witnesses" because they witnessed a murder committed by a corrupt police officer in South Africa and were threatened by the police when they tried to report it. The BIA disagreed, finding that crime witnesses do not constitute a "particular social group" in South Africa under the INA.

Because Congress has not defined what constitutes a "particular social group" under the INA, we defer to the BIA's reasonable interpretation of that term. Castillo-Arias, 446 F.3d at 1195–96. In Matter of Acosta, the BIA defined a

3

"particular social group" as a group of persons who "share a common, immutable characteristic."  19 I. & N. Dec. 211, 233 (BIA 1985), <u>overruled on other grounds by</u> <u>Matter of Mogharrabi</u>, 19 I. & N. Dec. 439 (BIA 1987).   The BIA noted that this characteristic "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences."  <u>Id.</u>

The BIA later refined the definition of "particular social group" by emphasizing two considerations: (1) immutability and (2) social visibility.  <u>Matter of C-A-</u>, 23 I. & N. Dec. 951, 957–59 (BIA 2006).  In analyzing social visibility, the BIA stressed that the social group category was not meant to be a "catch all" applicable to all persons fearing persecution.  <u>Id.</u> at 960.  Rather, a "particular social group" has characteristics which are "highly visible and recognizable by others in the country in question."  <u>Id.</u>  For example, the BIA determined that a group of "noncriminal informants" providing information about a drug cartel did not constitute a particular social group because the cartels "directed harm against anyone and everyone perceived to have interfered with, or who might present a threat to, their criminal enterprises."  <u>Id.</u>  In this sense, noncriminal informants are no different from "anyone who has crossed the . . . cartel or who is perceived to be

4

a threat to the cartel's interests." Id.  On appeal, we concluded that this interpretation of the INA was reasonable.  Castillo-Arias, 446 F.3d at 1199.[1]

With these principles in mind, we agree with the BIA that the Swarts failed to establish that they were members of a particular social group under the INA. There is little evidence that the Swarts' proposed social group in this case—crime witnesses—would be "highly visible and recognizable" by South African society. Matter of C-A-, 23 I. & N. Dec. at 960.  There is also no evidence that the Swarts were targeted or singled out for persecution because of their status as witnesses to a crime.  More likely, the Swarts were persecuted because they were viewed as a potential threat to the personal interests of the police officers involved in the murder.  See id.; Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006) ("[E]vidence that either is consistent with acts of private violence . . . or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground.").  In this sense, the Swarts are no different from the criminal informants in Castillo-

[1] The Swarts urge us to follow Valdiviezo-Galdamez v. U.S. Attorney General, 663 F.3d 582 (3d Cir. 2011), where the Third Circuit held that the BIA's social visibility requirement was not reasonable, and therefore not entitled to deference.  Id. at 603–09; see also Gatimi v. Holder, 578 F.3d 611, 615 (7th Cir. 2009) (arguing that the "social visibility" requirement "makes no sense; nor has the Board attempted, in this or any other case, to explain the reasoning behind the criterion of social visibility").  We are bound, however, by this Court's decision in Castillo-Arias to defer to the BIA finding regarding social visibility.  446 F.3d at 1196 (applying Chevron deference to the BIA's formulation of "particular social group"); see also Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) ("The law of this circuit is emphatic that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision." (quotation marks omitted)).

Arias, whose "defining attribute is their persecution by the cartel." 446 F.3d at 1198. As a result, the BIA's conclusion that the Swarts' proposed social group lacked the visibility to be considered a "particular social group" under the INA was not "arbitrary, capricious, or clearly contrary to law."[2] Id. at 1195 (quotation marks omitted).

## II.

The Swarts next argue that the IJ and BIA erred in finding that they were ineligible for CAT relief. To establish eligibility for CAT relief, applicants must demonstrate that it is more likely than not that they would be tortured if they are removed to the designated country of removal. 8 C.F.R. § 208.16(c)(2). Torture is defined, in part, as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

---

[2] We are not concluding that crime witnesses could never constitute a particular social group under the INA. We merely conclude that, based on the record before us, the Swarts failed to show that they were perceived as a group by their persecutors or South African society. See Gashi v. Holder, 702 F.3d 130, 132 (2d Cir. 2012) (holding that witnesses to war crimes were visible because they were published on a list of potential witnesses, fellow villagers were aware of the witnesses, and other potential witnesses were harassed); Henriquez-Rivas v. Holder, 707 F.3d 1081, 1091–92 (9th Cir. 2013) (en banc) (holding that crime witness was socially visible because the witness testified in open court and the Salvadoran legislature had enacted special witness protection laws).

8 C.F.R. § 208.18(a)(1).  Because the BIA expressly agreed with, and in part adopted, the reasoning of the IJ, we review the decisions of both the IJ and the BIA as to the Swarts' claims for CAT relief.  See Kazemzadeh, 577 F.3d at 1350.

We conclude that substantial evidence supports the decisions of the IJ and the BIA.  Indeed, the Swarts failed to show that it is more likely than not that they would be tortured upon their return to South Africa.  Although the Swarts were threatened by the police, there is no evidence that they were ever harmed, and nothing in the record compels the conclusion that the police would move beyond threats if the Swarts returned to South Africa.  Additionally, although the Swarts' relatives were questioned by the police about their whereabouts, the families were never told that the Swarts would be harmed if they returned to South Africa, nor were their families ever directly threatened by the police.  Therefore, there is nothing in the factual record that compels us to reverse the decisions of the IJ and the BIA.

### III.

Because the Swarts have not demonstrated that they are eligible for asylum, withholding of removal, or CAT relief, we deny the Swarts' petition for review.

**PETITION DENIED.**

7