[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13229
Non-Argument Calendar
_____

Agency No. A088-150-695

ZAYDA MENESES-FUNEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 1, 2019)

Before MARTIN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Zayda Meneses-Funez petitions for review of the Board of Immigration Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of her application for asylum, humanitarian asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  On appeal, she argues that the IJ erred when it determined that she failed to show past persecution or a well-founded fear of future persecution because it refused to consider changing circumstances and the fact that the guerrilla group that attacked her was now affiliated with the ruling party in Nicaragua.  She also argues that the IJ erred when it refused to recognize her particular social group of surviving witnesses of criminal activity because it was not overbroad, it was based on an immutable characteristic, and it was socially visible.  Meneses-Funez argues that the IJ and BIA erred in denying her humanitarian asylum because she could show severe harm and long-lasting effects.  Finally, she argues that the IJ and BIA also erred in denying her withholding of removal because she had established past persecution and that she did not waive her CAT claim.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  Where instead the BIA agrees with the IJ's reasoning, we will also review the IJ's decision only to the extent of the agreement.  *Ayala v. U.S.*

*Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).  We may only review fully exhausted claims, which must have been brought before the BIA for consideration. Immigration and Nationality Act ("INA") § 242(d)(1), 8 U.S.C. § 1252(d)(1); *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). Additionally, any arguments not raised before us on an appeal from the BIA's order are deemed abandoned.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

The IJ's factual findings are reviewed under the substantial evidence test. *Id.* at 1230.  We must affirm a fact-finding "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (quotation marks omitted). Under this highly deferential standard of review, we view the record evidence in the light most favorable to the agency's decision and draws all reasonable inferences in favor of that decision.  *Id*.  Thus, an IJ's decision can only be reversed if "the evidence compels a reasonable fact finder to find otherwise." *Sepulveda*, 401 F.3d at 1230 (quotation marks omitted).  Indeed, the fact that the record may support a conclusion contrary to the IJ's decision is not enough to justify a reversal of the administrative findings.  *Silva*, 448 F.3d at 1236.

The Department of Homeland Security ("DHS") has the discretion to grant asylum if the alien establishes that she is a "refugee."  INA § 208(b)(1)(A), 8

3

U.S.C. § 1158(b)(1)(A).  A refugee is a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his or her country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).  Generally, an applicant for asylum must establish either (1) past persecution on account of a protected ground, or (2) a well-founded fear of future persecution on account of a protected ground.  *Sepulveda*, 401 F.3d at 1230–31.

To establish eligibility for asylum based on past persecution, the applicant must show that (1) she was persecuted, and (2) that the persecution was on account of a protected ground.  *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007).  Persecution itself is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation."  *Id.* (quotation marks omitted).  We have determined that "intentionally being shot at in a moving car multiple times by two armed men on motorcycles" qualifies as persecution.  *Id.* at 1233.  However, even where the applicant was shot at, the record must compel the conclusion that the shooting was done on account of a statutorily protected ground.  *Id.* at 1234.  Asylum is intended to protect against persecution by either government forces or private actors that the government cannot control.  *Ayala*, 605 F.3d at 948.

4

To establish eligibility for asylum based on a well-founded fear of future persecution, the applicant must prove that (1) she had a "subjectively genuine and objectively reasonable fear of persecution" and that (2) such fear of persecution was on account of a protected ground. *Sanchez Jimenez*, 492 F.3d at 1232. A showing of past persecution will create a rebuttable presumption of a well-founded fear of future persecution. *Id.* To overcome this presumption, the DHS bears the burden of showing, by a preponderance of the evidence, that the conditions in the country have changed or that the applicant "could avoid future persecution by relocating within the country" if it would have been reasonable to do so. *Id.* However, if the applicant cannot demonstrate past persecution, she will bear the burden of showing that it would not be reasonable for her to relocate, unless the persecution was by the government or is government-sponsored. 8 C.F.R. § 208.13(b)(3)(ii). Generally, an applicant's failure to seek protection within the home country can defeat an asylum claim, unless the applicant shows convincingly that authorities there would have been unable or unwilling to protect the applicant. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007). Moreover, an applicant's voluntary return to her home country is a relevant consideration in determining whether she has established a well-founded fear of future persecution and may undermine such a claim of persecution. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1011 (11th Cir. 2008).

5

To satisfy the requirement that the persecution occurred "on account of a particular ground," the applicant must prove that she was persecuted at least in large part because of her race, religion, nationality, membership in a particular social group, or political opinion. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1307 (11th Cir. 2019) (quotation marks omitted); *see* INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). The applicant must provide some evidence, direct or circumstantial, of her persecutors' motives. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). Where the evidence equally supports an inference of persecution based on a protected ground or on an unprotected ground, the record does not "compel" us to hold otherwise. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891 (11th Cir. 2007). Evidence that is consistent with acts of private violence or that merely shows that a person has been the victim of criminal activity does not constitute evidence of persecution on account of a statutorily protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006).

We defer to the BIA's interpretation of "particular social group," as long as such interpretation is reasonable. *Perez-Zenteno*, 913 F.3d at 1307. The BIA has interpreted the phrase "particular social group" as a group sharing "common, immutable characteristic[s]," which must be ones that "the members of the group either cannot change, or should not be required to change because [they are] fundamental to their individual identities or consciences." *Id.* at 1308-09

6

(quotation marks omitted).  The BIA has also required that a particular social group must be "defined with particularity and be socially distinct within the society in question."  *Id.* at 1309 (quotation marks omitted).  Further, the BIA has required that, to be particular, the social group must not be "amorphous, overbroad, diffuse, or subjective," and to be socially distinct, the group must be "set apart, or distinct, from other persons within the society in some significant way."  *Id.* (quotation marks omitted).

In *Perez-Zenteno*, we determined that the BIA reasonably applied its own precedent to find that the applicant had not established that her proposed social group—"Mexican citizens targeted by criminal groups because they have been in the United States and they have families in the United States"—was either socially distinct or defined with sufficient particularity.  *Id.* at 1307, 1309 (quotation marks omitted).  Notably, we found that the applicant "failed to present any evidence even suggesting that the particular social group she had proffered was perceived as being socially distinct."  *Id.*  It also noted the BIA's reasoning that the applicant's formulation of her proposed group was circular because it was largely defined by the risk of persecution.  *Id.* at 1310.

An alien may also obtain asylum for humanitarian reasons on the basis of severe past persecution, even if she does not establish that she has a well-founded fear of future persecution, where she can establish: (1) "compelling reasons for

being unwilling or unable to return to the country arising out of the severity of the past persecution," or (2) "a reasonable possibility that [she] may suffer other serious harm upon removal to that country." 8 C.F.R. § 208.13(b)(1)(iii); *Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1200 (11th Cir. 2009). This type of relief is "reserved for the most extraordinary cases." *Id.* at 1201. We have noted that a denial of an applicant's petition for review for failure to show past persecution on account of a protected group, specifically a cognizable social group, will foreclose a claim to humanitarian asylum. *Perez-Zenteno*, 913 F.3d at 1311 n.3.

To qualify for withholding of removal, an applicant must establish that her "life or freedom would be threatened in [her] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The applicant must show that it is more likely than not that she will be persecuted on account of a protected ground if returned to her home country. *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013). If an applicant fails to establish eligibility for asylum, "he necessarily cannot meet the more stringent burden for withholding of removal." *Amaya-Artunduaga*, 463 F.3d at 1249 n.3.

To qualify for CAT relief, the alien must prove that it is more likely than not that she would be tortured by, or with the consent or acquiescence of, a public official or person acting in an official capacity upon return to her country. *Najjar*,

8

257 F.3d at 1303.  In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, evidence that an applicant could relocate to a part of the country of removal where she is not likely to be tortured should be considered.  8 C.F.R. § 1208.16(c)(3)(ii).

Here, as an initial matter, Meneses-Funez's arguments against the IJ's conclusions regarding the timeliness of her asylum application and her credibility are not properly before this Court.  Even though the BIA summarized the IJ's conclusions, mentioning the timeliness and credibility determinations, it did not expressly adopt or agree with the IJ's findings on either of these grounds.  The BIA only agreed with the IJ's conclusions that she failed to establish past persecution and a well-founded fear of future persecution.  Thus, we will only review the BIA's decision and the IJ's decision to the extent of the agreed conclusions.  *See Al Najjar*, 257 F.3d at 1284.  Furthermore, Meneses-Funez has abandoned her claim for voluntary departure, because she makes no reference to it in her initial brief before this Court. *See also Sepulveda*, 401 F.3d at 1228 n.2.

Turning to the merits of Meneses-Funez's argument on appeal, the IJ specifically determined that she failed to establish past persecution because, even in light of the severity of the shooting attack, she failed to show that the shooters were part of a group that the Nicaraguan government was unwilling or unable to control.  The BIA stated that Meneses-Funez did not present any arguments

9

challenging that reasoning.  On appeal, Meneses-Funez has also failed to challenge

it, or otherwise challenge the IJ's specific reasons for declining to find past

persecution, as her argument is only that the IJ and BIA failed to consider changed

circumstances since 2007 and improperly discredited her proposed social group.

Thus, Meneses-Funez failed to exhaust and has abandoned any argument against

the IJ's conclusion as to her failure to show past persecution based on a lack of

evidence of the government's control over the attackers. *See Amaya-Artunduaga*,

463 F.3d at 1250; *see also Sepulveda*, 401 F.3d at 1228 n.2.

Even if we addressed that abandoned argument, substantial evidence

supports the IJ's and BIA's denial of Meneses-Funez's asylum claim for failure to

show past persecution because the record does not compel a finding that the

Nicaraguan government was unable or unwilling to control the alleged attackers.

Specifically, even though she testified that the shooters identified themselves as

part of the Carlos Fonseca resistance and she provided documentation showing that

this group was a branch of the FUAC, this evidence does not show that, in 2000,

the FUAC was operating as part of, or with the acquiescence of, the Nicaraguan

government.  Her argument that the evidence she provided demonstrates that the

FUAC was allied with the Sandinista party who later took control of the

government in 2007 is over-stated because the article only suggested that the

FUAC was comprised of former Sandinista soldiers.  Furthermore, the record

suggests that these former soldiers were strongly critical of the Sandinista government and were angry with the way the military was disbanded at the end of the war. Thus, the fact that they were former Sandinistas does not support her argument that they were allied with the Nicaraguan government. Moreover, the record also shows that the Nicaraguan government was active in its pursuit of catching those responsible for the ambush on Meneses-Funez and the other officers. She testified that suspects were arrested, and the Nicaraguan government requested her participation to testify against them in an attempt to bring them to justice. She also submitted a crime report from 2002 that stated that three of the leaders of the FUAC were killed in a fight with the military, at which point the group had been effectively destroyed. Meneses-Funez did not offer a definitive explanation for why the Nicaraguan government could not provide her with protection, arguing that it could have been a lack of resources, no desire, or corruption. But the evidence of the FUAC's destruction at the hands of the Nicaraguan military contradicts her argument. Thus, the record does not compel the conclusion that the Nicaraguan government was unwilling or unable to control the alleged attackers.

Finally, Meneses-Funez's argument that the IJ ignored evidence that the Carlos Fonseca resistance group and the FUAC were closely aligned with the Sandinista government as of 2007 is misplaced because these changed

11

circumstances as of 2007 do not explain the political conditions at the time of the attack in 2000. Nor is there record evidence to support a resurgence of the FUAC as a guerrilla group after 2001. To the extent that she argues that the IJ erred by failing to permit her to amend her asylum application to include this information, this argument is not properly before this Court because she failed to request any amendment before the IJ or make the same argument before the BIA. *See also Amaya-Artunduaga*, 463 F.3d at 1250. Thus, the record does not compel a finding of past persecution.

The record also does not compel the conclusion that Meneses-Funez established a well-founded fear of future persecution. Unable to establish past persecution, she was required to show that it was not reasonable for her to safely relocate within Nicaragua. *See* 8 C.F.R. § 208. 13(b)(3)(ii). First, her year-long stay with her sister in Nicaragua and re-entry several years after the shooting undermine her claim that she had a well-founded fear of future persecution. *See also De Santamaria*, 525 F.3d at 1011. Even though she sought protection from Nicaraguan authorities and it was denied, she has not shown that the government was unable or unwilling to protect her. *See Lopez*, 504 F.3d at 1345. Specifically, she does not explain with any definitive reason or provide evidence that she was denied protection because of the government's control, or lack thereof, over the FUAC. Moreover, the evidence of the FUAC's virtual annihilation by the

12

Nicaraguan government in 2001 and the FUAC's subsequent involvement in mostly common crime further undermine the fear that Meneses-Funez would not be able to safely return to Nicaragua.

Meneses-Funez's asylum claim fails for yet another reason. Even if Meneses-Funez were to establish that she had been persecuted in the past or that she had a well-founded fear of future persecution, the record does not compel the conclusion that Meneses-Funez established that any persecution was based on a valid protected ground. First, Meneses-Funez has abandoned any claim that relies on the protected ground of her political opinion because she has failed to make such an argument before this Court. *See also Sepulveda*, 401 F.3d at 1228 n.2. Second, her alternative protected ground—membership in the group consisting of survivors and witnesses of criminal activity that have information that would embarrass the government and the perpetrators of the crime—fails because it does not qualify as a protected ground under the INA. She argues that *Swart v. United States Attorney General*, 552 F. App'x 922, 925 (11th Cir. 2014), supports her proposition that crime witnesses are a distinct social group, but her argument is misplaced because this Court in *Swart* still required the applicant to provide evidence that society also viewed the proposed group as socially distinct. *See Swart*, 552 F. App'x at 925. While it may be true that her characteristics and qualifications for membership in this group are unchangeable, and that publishing

13

her name in the paper made her highly visible, she has still failed to provide evidence that this particular group was viewed as a distinct social group by Nicaraguan society. *See Perez-Zenteno*, 913 F.3d at 1309. Thus, the record does not compel the conclusion that she was persecuted on account of a protected ground. Accordingly, substantial evidence supports the IJ's and BIA's denial of Meneses-Funez's asylum claim.

Because she has failed to demonstrate past persecution, she also is not entitled to humanitarian asylum. *See id.* at 1311 n.3. Furthermore, because she has failed to meet her burden for obtaining asylum, she necessarily cannot meet the higher burden for withholding of removal. *See Amaya-Artunduaga*, 463 F.3d at 1249 n.3. Finally, Meneses-Funez's argument as to her CAT claim is not properly before this Court as it is unexhausted because she did not specifically argue it before the BIA. *Amaya-Artunduaga*, 463 F.3d at 1250.

PETITION DENIED.

14

MARTIN, Circuit Judge, concurring in the judgment:

If Zayda Meneses-Funez is to be believed, she has endured terrible trauma at the hands of a guerilla group. Nonetheless, because she failed to challenge the Board of Immigration Appeals' ("BIA") finding that the government was neither unwilling nor unable to control her persecutors and because the record does not compel the conclusion she has a well-founded fear of persecution, I agree with the panel's decision to deny her petition for review.

Briefly, the facts underlying Ms. Meneses-Funez's application for asylum (including humanitarian asylum) and withholding of removal are these.[1] On April 18, 2000, Ms. Meneses-Funez, a payroll officer working for the National Police of Nicaragua, was riding in a police truck when it was ambushed by members of Carlos Fonseca, a guerilla group also known as the Andrés Castro United Front or FUAC. The police truck came under heavy fire for five or six minutes. Only two people survived the initial ambush—Ms. Meneses-Funez, who had been shot several times, and another officer named David Divan. When the FUAC realized Officer Divan was still alive, they shot and killed him. As the guerilla group discussed burning the truck, Ms. Meneses-Funez lifted her hand to signal she was

---

[1] The BIA presumed Ms. Meneses-Funez was credible and her application timely, as do I. See Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1344 (11th Cir. 2007) (explaining this Court will not address findings by the immigration judge ("IJ") that the BIA did not adopt in its decision); see also Melo v. U.S. Att'y Gen., 754 F. App'x 838, 839 n.1 (11th Cir. 2018) (per curiam) (unpublished).

still alive.  Because Ms. Meneses-Funez was not wearing her police uniform at the time, she was able to deceive the FUAC members into thinking she was a civilian unaffiliated with the police force and letting her go.  She eventually made her way to a hospital, where she received treatment for multiple gunshot and shrapnel wounds.

Ms. Meneses-Funez moved twice afterwards.  Once, she went to live with her sister in a different part of Nicaragua for a year.  A second time, she moved to Costa Rica.  Both moves grew out of her fear the guerilla group would track her down and kill her as the sole witness to the ambush, because the media had exposed her identity as part of its reporting on the massacre.  She only returned to Nicaragua when the families of the slain officers asked her testify at the trial of the alleged killers.  However, she refused to testify when the government failed to offer her and her family police protection in exchange for her testimony.  Branded a "police traitor" by the government for her actions, Ms. Meneses-Funez fled to Costa Rica, then Guatemala, then Mexico, before arriving at the United States.

The IJ found, and the BIA agreed, that Ms. Meneses-Funez nonetheless failed to establish past persecution for asylum and withholding purposes because the record did not show that the Nicaraguan government was either unwilling or unable to control the FUAC.  I agree with my colleagues that because Ms. Meneses-Funez does not challenge that finding on appeal, she has abandoned all

16

argument on this point.  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).  Had I been writing for the majority, I would have stopped there.  But instead, the majority opinion goes on to opine on the merits of Ms. Meneses-Funez's abandoned argument.  I decline to join this part of the discussion.  See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to "address the merits of th[e] cross-appeal" because the issue was abandoned on appeal).

For similar reasons, I do not join the majority opinion's discussion of all the alternative grounds the BIA offered for finding Ms. Meneses-Funez failed to demonstrate a well-founded fear of future persecution that would entitle her to asylum or withholding of removal.[2]  One ground would have sufficed.

In this case, the BIA agreed with the IJ that Ms. Meneses-Funez's ability to relocate to a different part of Nicaragua and live with her sister for a year without harm substantially undermined her argument that her fear of persecution by the FUAC was objectively reasonable.  I agree that nothing in the record compels a contrary conclusion.

---

[2] A finding of past persecution entitles a petitioner to a rebuttable presumption of future persecution.  See 8 C.F.R. §§ 1208.13(b)(1), 1208.16(b)(1)(i).  Failure to establish past persecution means a petitioner must independently show a well-founded fear of future persecution.  See De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1007 (11th Cir. 2008).

17

To the extent Ms. Meneses-Funez argues she is entitled to a "presump[tion] that internal relocation would not be reasonable," 8 C.F.R. § 1208.13(b)(3)(ii), because the FUAC is tied to the Sandinista government in Nicaragua, that argument is without merit.  Although the record contains some evidence that the FUAC undertook a campaign of fear in some places in 2001 to try to secure election victories for Sandinista candidates, there is also evidence the FUAC has since left behind its leftist roots and devolved into a mostly criminal enterprise. Because the evidence could reasonably support multiple, different conclusions, the record does not compel the conclusion that the FUAC is part of the Sandinista government.  See Adefemi v. Ashcroft, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc).

Under the regulations, an applicant does not have a well-founded fear of persecution if she can avoid persecution by reasonably relocating "to another part of [her] country of nationality."  8 C.F.R. § 1208.13(b)(2)(ii).  Because the agency's findings on this point must stand, I would have ended the inquiry here.[3]  I am aware of no need to address the BIA's alternative conclusion that Ms.

---

[3] There was no need to discuss voluntary return.  However, I will note that although a finding of voluntary return can "undermine" a claim of well-founded fear of future persecution, as my colleagues in the majority say, voluntary return by itself is not dispositive of the issue. De Santamaria, 525 F.3d at 1011 ("[W]e do not endorse the principle espoused by the IJ—that a voluntary return to one's home country always and inherently negates completely a fear of persecution.").

Meneses-Funez failed to show she was persecuted on account of her membership in a sufficiently distinct and particular social group.

As for Ms. Meneses-Funez's applications for withholding under the Convention Against Torture and voluntary departure, I agree with my colleagues those are not properly before this Court for review. By failing to challenge the IJ's denial of those applications to the BIA, Ms. Meneses-Funez failed to exhaust her administrative remedies. See Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1298–99 (11th Cir. 2015).

For all the reasons I have set out here, I agree that Ms. Meneses-Funez's petition for review should be denied.